IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WISCONSIN LABORERS HEALTH FUND,
BUILDING & PUBLIC WORKS LABORERS
VACATION FUND, WISCONSIN LABORERS
APPRENTICESHIP AND TRAINING FUND,
JOHN J. SCHMITT, in his capacity as Trustee,          OPINION AND ORDER
WISCONSIN LABORERS-EMPLOYERS
COOPERATION AND EDUCATION TRUST                       13-cv-866-bbc
FUND, WISCONSIN LABORERS INDUSTRY
ADVANCEMENT PROGRAM FUND, and
WISCONSIN LABORERS DISTRICT COUNCIL,

                                        Plaintiffs,

              v.

SAFE ABATEMENT FOR EVERYONE, INC.
and CRAIG MURDOCK

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiffs have brought suit under federal and state law, alleging that defendants Safe

Abatement for Everyone, Inc. and Craig Murdock have failed to make timely payments to

plaintiffs' trust funds on behalf of defendants' employees, as required under the collective

bargaining agreements covering those employees.  Defendants dispute the claims and have

filed a state law counterclaim alleging that one of the plaintiffs, Wisconsin Laborers District

Council, fraudulently induced Murdock to execute a "letter of assent" making Safe

Abatement a signatory employer to a collective bargaining agreement known as the "State

1

Asbestos Removal Agreement." (In fact, defendants' answer to the first amended complaint includes *two* counterclaims to plaintiffs' first amended complaint, Dfts.' Ans., dkt. #14, at pp. 7-11, one for fraud in the inducement and the second for fraud in the execution of the letter of assent. However, the allegations in both are identical and both sides refer to the two counterclaims as one throughout their discussion of the issue in their briefs. I will do the same.)

The case is before the court on plaintiff Wisconsin Laborers District Council's motion to dismiss the counterclaim against it for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Rule 12(b)(6). Plaintiff contends that the counterclaim is preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because resolution of the claim requires the court to interpret a labor contract and cannot be restated as a federal breach of contract claim under § 301. In the alternative, plaintiff argues that the counterclaim is preempted by San Diego Building Trades v. Garmon, 359 U.S. 236 (1956), which prohibits state regulation of conduct governed by §§ 307 and 308 of the National Labor Relations Act, including misrepresentations during collective bargaining negotiations.

Because I agree that § 301 preempts defendants' counterclaim, I am granting plaintiff's motion to dismiss. As a result, it is unnecessary to address plaintiff's alternative argument regarding preemption under Garmon.

The following facts are alleged in plaintiffs' amended complaint, defendants' answer and the Letter of Assent attached to plaintiff's motion and referred to in the pleadings. Burke v. 401 N. Wabash Venture, LLC, 714 F.3d. 501, 505 (7th Cir. 2013) (documents

attached to motion to dismiss are part of pleadings if referred to in complaint and central to claim).

## BACKGROUND

Plaintiff Wisconsin Laborers District Council is a labor organization with offices in DeForest, Wisconsin.  Defendant Safe Abatement is a Wisconsin corporation with offices in Kenosha, Wisconsin.  Defendant Craig Murdock is a shareholder and registered agent for Safe Abatement.

Plaintiff and Safe Abatement were parties to a collective bargaining agreement titled the "State Residential Agreement," which expired on June 1, 2012.  Among other things, the residential agreement required Safe Abatement to make contributions to the trust fund plaintiffs on behalf of Safe Abatement's covered employees.

On or about November 5, 2009, plaintiff's representative, Corey McGovern, gave defendant Murdock a document to sign entitled "Letter of Assent Asbestos Removal Agreement."  Defendants allege that McGovern told Murdock that the letter of assent was another document that needed to be signed to make Safe Abatement a signatory employer to the State Residential Agreement.  Allegedly relying on those representations, Murdock signed the letter on November 5, 2009.  However, the letter states in relevant part that

The Contractor and the Union agree as follows:

1.    The Contractor recognizes the Union as the sole and exclusive bargaining representative for and on behalf of the employees of the Contractor within the territorial and occupational

jurisdiction of the Union, as specified in the Statewide Asbestos Removal Agreement referred to as "Agreement".

2.      The Union and the Contractor hereby adopt the Agreement between Signatory Employers and the Wisconsin Laborers' District Council and both the Contractor and the Union agree to be bound by all the terms and conditions of said Agreement.

Dkt. #7, exh. 1.

Plaintiff contends that the letter of assent makes it clear that Safe Abatement was agreeing to become a signatory employer to the Statewide Asbestos Removal Agreement. Among other things, that agreement specifies that it is the intention of the parties to settle and determine all matters of collective bargaining, dkt. #19 at 3, and sets forth a grievance procedure and prohibits strikes during the dispute resolution process.  Id. at 12-13.

On December 18, 2013, plaintiffs filed suit in this court alleging that defendants failed to make timely payments to plaintiffs' trust funds as required under the Statewide Asbestos Removal Agreement.


OPINION

A. § 301 Preemption of State Counterclaim

Plaintiff contends that defendants' state law counterclaim for fraudulent inducement and execution is preempted by § 301 of the Labor Management Relations Act, which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. §

4

185(a).  The United States Supreme Court has held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, see Avco Corp. v. Aero Lodge, 735, 390 U.S. 557 (1968), or dismissed as pre-empted by federal labor-contract law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985). "[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." Id. at 211.  Plaintiff argues that in order to resolve the counterclaim, the court will have to analyze the parties' letter of assent, which plaintiff claims is a labor contract.

1.  Letter of assent as labor contract

Although § 301 does not define the term "contract," the Supreme Court has held that any agreement "between employers and labor organizations significant to the maintenance of labor peace between them" constitutes a labor contract under the statute.  Retail Clerks International Association, Local Union Nos. 128 and 633 v. Lion Dry Goods. Inc., 369 U.S. 17, 28 (1962) (finding strike settlement agreement between employer and labor organizations was contract under § 301).  The Court has stated generally that "[a] collective bargaining agreement is an effort to erect a system of industrial self-government," and "the grievance machinery under a collective bargaining agreement is at the very heart of the

5

system of industrial self-government." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 580-81 (1960). See also Thomas v. LTV Corp., 39 F.3d 611, 618 (5th Cir. 1994) (finding same).

Defendants contend that the letter of assent in this case does not itself maintain "labor peace" or otherwise set up a system of self government. I disagree. The letter states that plaintiff will become the bargaining representative for Safe Abatement's employees and that the parties will abide by the Statewide Asbestos Removal Agreement, which specifies that it is the intention of the parties to settle and determine all matters of collective bargaining. Further, the statewide agreement sets forth a grievance procedure and prohibits strikes during the dispute resolution process. Because the parties adopt and agree to be bound by the statewide agreement in the letter of assent, it is a key part of the parties' "system of industrial self-government." E.g., Inlandboatmens Union of the Pacific v. Dutra Group, 279 F.3d 1075, 1079 (9th Cir. 2002) overruled on other grounds by Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (collective bargaining agreement includes written side agreements and oral understandings entered into by parties to collective bargaining relationship, including settlement agreements); Rollie Winter & Associates, Ltd. v. Fox River Valley Building & Construction Trades Council, 59 F. Supp. 2d 807, 813 (E.D. Wis. 1999) (job targeting agreement within scope of § 301 because it provided nonconfrontational means of increasing union labor and avoiding strikes); Pattern Makers' Pension Trust Fund v. Badger Pattern Works, Inc., 615 F. Supp. 792, 800 (N.D. Ill. 1985) ("[A] pension trust agreement can form the basis for jurisdiction under NLRA § 301(a) when it is part and

parcel of an effective collective bargaining agreement."). Accordingly, I find that the letter of assent is a labor contract under § 301.

2. <u>Need to interpret labor contract</u>

The parties agree that defendants cannot prevail on their counterclaim for fraudulent inducement unless they can show that (1) plaintiff made a factual representation which was untrue; (2) plaintiff made the representation knowing it was untrue or made it recklessly without caring whether it was true or false; (3) plaintiff made the representation with intent to defraud and to induce defendants to act upon it; and (5) defendants believed the statement to be true and reasonably relied on it to their detriment. <u>Kaloti Enterprises, Inc.</u> <u>v. Kellogg Sales Co.</u>, 2005 WI 111, ¶ 12, 283 Wis. 2d 555, 569, 699 N.W.2d 205, 211; <u>Kailin v. Armstrong</u>, 2002 WI App 70, ¶ 31, 252 Wis. 2d 676, 702, 643 N.W.2d 132, 145-46. The parties also agree that fraudulent execution similarly requires a showing that a signatory's ignorance of its contractual obligations was excusable because it reasonably relied upon the opposing party's representations. <u>Laborers' Pension Fund v. A & C</u> <u>Environmental, Inc.</u>, 301 F.3d 768, 780 (7th Cir. 2002). With respect to the reasonable reliance requirement, "[n]egligent reliance is not justifiable." <u>Ritchie v. Clappier</u>, 109 Wis. 2d 399, 404, 326 N.W.2d 131, 134 (Ct. App. 1982). "Generally, a person is negligent if he or she signs a contract without ascertaining its contents and is not prevented from doing so, even if induced to sign by fraudulent misrepresentations." <u>Id.</u>, 109 Wis. 2d at 404-05 (citing <u>Bostwick v. Mutual Life Insurance Co.</u>, 116 Wis. 392, 403, 89 N.W. 538, 541

(1903)).  See also Williams v. Rank & Son Buick, Inc., 44 Wis. 2d 239, 245, 170 N.W.2d 807, 810 (1969) ("Many previous decisions of this court have held that one cannot justifiably rely upon obviously false statements.").

Plaintiff argues that it is necessary to interpret the letter of assent in this case because it relates directly to the issue of reasonable reliance.  Specifically, plaintiff contends that because the letter states on its face that the parties were adopting the *Statewide Asbestos Removal Agreement*, Murdock did not reasonably rely on McGovern's alleged statements that the parties were adopting the *State Residential Agreement*.

Citing Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 407 (1988), defendants contend that what matters for reasonable reliance is the conduct of the parties, which does not require the court to interpret any term in a collective bargaining agreement. However, Lingle involved an employment law claim for retaliatory discharge that presented a "purely factual inquiry [that] likewise does not turn on the meaning of any provision of a collective bargaining agreement."  Id. at 407.  In this case, defendants agree that they are questioning which collective bargaining agreement they adopted in executing the letter of assent.  Dkt. #12 at 4.  As a result, the terms of the letter of assent are important to the resolution of defendants' counterclaim.  The Supreme Court made a similar distinction in Lingle:

> In Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985), we considered whether the Wisconsin tort remedy for bad-faith handling of an insurance claim could be applied to the handling of a claim for disability benefits that were authorized by a collective-bargaining agreement.  We began by examining the collective-bargaining agreement, and determined that it provided the basis not only for the benefits, but also for the right to have

8

payments made in a timely manner.  Id., at 213-216.  We then analyzed the Wisconsin tort remedy, explaining that it "exists for breach of a 'duty devolv[ed] upon the insurer by reasonable implication from the express terms of the contract,' the scope of which, crucially, is 'ascertained from a consideration of the contract itself.'"  Id., at 216 (quoting Hilker v. Western Automobile Insurance Co., 204 Wis. 1, 16, 235 N.W. 413, 415 (1931)).  Since the "parties' agreement as to the manner in which a benefit claim would be handled [would] necessarily [have been] relevant to any allegation that the claim was handled in a dilatory manner," 471 U.S., at 218, 105 S. Ct., at 1915, we concluded that § 301 pre-empted the application of the Wisconsin tort remedy in this setting.

Thus, Lueck faithfully applied the principle of § 301 preemption developed in Lucas Flour. . .

Lingle, 486 U.S. at 405.

In sum, although various factual inquiries may be relevant to defendants' counterclaim, determining whether it was reasonable for Murdock to rely on McGovern's statements necessarily involves an analysis of the contents and meaning of the letter of assent.  As a result, I find that the counterclaim is preempted by § 301.

## B.  Federal Claim Under § 301

As plaintiff points out, because § 301 preempts the state law counterclaim, I must dismiss the counterclaim unless defendants can restate it as a viable federal claim under § 301.  "By its terms, [§ 301] confers federal subject-matter jurisdiction only over '[s]uits for violation of contracts.'"  Textron Lycoming Reciprocating Engine Division, Avco Corp. v. United Automobile, Aerospace, Agricultural. Implement Workers of America, International Union, 523 U.S. 653, 656 (1998).  In Textron, the Supreme Court rejected the union's argument that § 301 was broad enough to include suits alleging that a contract is invalid:

"Suits for violation of contracts" under § 301(a) are not suits that claim a contract is invalid, but suits that claim a contract has been violated.

This does not mean that a federal court can never adjudicate the validity of a contract under § 301(a).  That provision simply erects a gateway through which parties may pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse.  Thus if, in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with § 301(a), adjudicate that defense.  See Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 85–86, 102 S. Ct. 851, 860–861, 70 L. Ed. 2d 833 (1982).  Similarly, a declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid.  But in these cases, the federal court's power to adjudicate the contract's validity is ancillary to, and not independent of, its power to adjudicate "[s]uits for violation of contracts."

Id. at 657-58.  See also Gerhardson v. Gopher News Co., 698 F.3d 1052, 1058 (8th Cir. 2012) ("Textron only permits a litigant to raise the validity of a contract as an affirmative defense; it does not allow such claims to be asserted offensively.").

Plaintiff contends that dismissal is required in this case because defendants have alleged only that the letter of assent is invalid and not that plaintiff violated any provision of the agreement.  Defendants have not responded to plaintiff's argument or otherwise alleged that the court may treat the fraud counterclaim as a contract violation.  (As plaintiff explains in its reply brief, defendants mention Textron and Gerhardson, but they do so only with respect to plaintiff's alternative argument that the counterclaim is preempted by Garmon.)  Defendants' failure to respond means the issue is waived.  Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").  However, even if defendants had not waived the issue, it seems unlikely from the

10

record before the court that defendants could bring a counterclaim for breach of contract in this case.

In sum, because defendants have not alleged a violation of the parties' collective bargaining agreement, this court lacks jurisdiction over the counterclaim and must dismiss it. Doran Main LLC v. North Central States Regional Council of Carpenters, 2013 WL 4519416, *4 (D. Minn. June 27, 2013) (finding same).  However, as indicated in Textron, defendants may raise invalidity as an affirmative defense to plaintiffs' claims against them.


ORDER

IT IS ORDERED that plaintiff Wisconsin Laborers District Council's motion to dismiss the counterclaims in the answer to the amended complaint filed by defendants SAFE Abatement for Everyone and Craig Murdock, dkt. #14, is GRANTED.

Entered this 17th day of June, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

11